Case number 17-364. United States of America v. Fraser Verrusio, Appellant. Mr. Zubecki, the attorney, Mr. Lang, the appellate. Good morning, Your Honors. May it please the Court, Ritz-O-Yeki from Baker Botts for the Appellant Petitioner, Fraser Verrusio. Your Honor, the District Court in this case committed three errors that we would like this Court to address. First, the District Court erred in finding that Mr. Verrusio did not challenge his count three conviction in his petition for quorum novus. He did, and therefore this Court should focus its analysis on whether the spillover standard was met. Second, the District Court applied the right factors but applied them incorrectly. The spillover test should be focused on comparing inadmissible evidence against evidence that would remain for the remaining counts, a count three only retrial. Here, the District Court essentially conducted a sufficiency of the evidence test in favor of the government instead of a pro-defendant spillover test. Third, in part because the District Court applied the test incorrectly, it reached the wrong result and did not find prejudicial spillover. And I want to highlight one point on that. The jury heard extensive testimony from Trevor Buchan about he accepted gifts, bribes more accurately. And then the jury heard how Mr. Buchan accepted the New York trip. So they see Trevor Buchan, corrupt public official, accepts the New York trip. Then they hear testimony that Mr. Verrusio also accepted the New York trip. The concern here is their prejudice is that the jury had Trevor Buchan's corrupt activity that again had nothing to do with Mr. Verrusio. There was no testimony that he knew about the criminal enterprise between Buchan and Blanger. All the testimony was directed at the New York trip. Under the spillover standard, this court has to be certain that that inadmissible evidence, the Buchan-Blanger criminal enterprise testimony, among other things, did not influence the jury's consideration of count three. If the court doesn't have that certainty, then count three cannot stand. So can I ask you a question? There's a lot of layers that one can go through in this case, but on the applicability of the spillover standard. Yes, Your Honor. So the spillover standard typically has come up, as I understand it, on direct appeal. That would be – yes. It is usually the appellate court overturning a conviction and then turning to spillover. It does rarely come up at the district court level. Right. But here we're talking about something that comes later in the form of coram nobis. Yes. It's not immediately apparent that the same framework that one would apply in a criminal appeal should carry over without any modification into this context. Your Honor, I don't know what other – how else one would look at it, but I would point out that the Third Circuit just a few weeks ago in the United States, FATA, came – this is a very rare circumstance, but they had a case where the district court, after McDonnell, granted a Rule 29 motion and then considered spillover, denied the spillover claim. That went up on appeal, and the Third Circuit considered it. They said we had a plenary review of the spillover analysis and then conducted the spillover analysis as it would in the normal course. What stage of the proceedings was – did that come up? So the – there was a trial. I'm not sure of the timing about when McDonnell happened, but the defendant had the benefit of McDonnell after the trial, I believe. Rule 29 motion granted. Then he said, in light of that, I have spillover. But before the conviction became final. Yes, Your Honor, and before the district court correct. Right. And so this just seems different because here the conviction became final because there was a direct appeal. The conviction was affirmed. And then we're on collateral review with 2255 and Coram Novus. And, of course, in a variety of contexts apply a different framework in the habeas slash 2255 slash Coram Novus universe then when a case is making its way up the direct appellate sheet. Yes, Your Honor. Here – I mean, in all cases, the prejudicial spillover, the predicate is that the defendant has been wrongfully convicted. We don't get to spillover unless there's a wrongful conviction. And I think that makes sense why it's a pro-defendant test. There's been a wrong. There should be a way to correct the wrong to you. I guess mine is, well, then, what has he just left without a remedy, without a recourse? I think the spillover test fits in nicely here. And I don't see – I guess the – part of the reason I picked up on that is because as I understood the way you started it, you were focused on who has the burden in spillover and what the nature of the showing is in spillover in a way that inures to Vericio's benefit here. Understandably, that's your charter, so you would do that. But it's not entirely clear that whatever favorable terrain would inure to a criminal defendant's favor on direct appeal would translate to a habeas slash 2255 slash Coram Novus context because a lot of times under the law, burdens are flipped and they go to a different party, the standards heightened, because we're in a situation in which a conviction is final. Understanding, as you rightly say, that we're assuming that there was a wrong committed, but still because the conviction has become final, we don't apply the same defendant favorable framework when we're past the final conviction. What do you say to your adversary's argument that virtually the same evidence would have been probative on count three because if your client had behaved unethically rather than criminally, it would be a motive for misstating or filling out the reports incorrectly? Your Honor, I think that's a completely different kettle of fish. I think the idea that the government... What do you mean? Is go to the jury and so on one hand we have jury, he may have done something unethical. Legal, we're not saying it's not illegal, unethical. No, I don't know. This is his motive for doing something illegal, which is improperly filling out the form. Yes, Your Honor. What I'm saying is how the jury, how would it be different? The government would be limited in how it could characterize his motive. Post-McDonald, the jury can't say he's trying to hide a corrupt illegal act. Maybe they could play the unethical card. Yes, why not? Uncertainly, that's the way I would prosecute him. Right, but for this standard, can we be sure that the jury was not influenced? And the question is, is there a difference? Do we see a difference between describing an act as corrupt, as illegal? But don't you have to show counsel that it would have been an abuse of discretion for a district court judge to admit the evidence at all? I mean, isn't that really what you have to show? Not that a reasonable judge could exclude it, but that it would be an abuse of discretion for a judge to admit the evidence. No, Your Honor, that is not how I read the case law. It is a look anew at the evidence. As I see it, it is a prospective analysis. If we were to retry this case, what would it look like? Wait a minute, are you saying we have no, we are de novo here? We don't give any deference to the district judge? On the spillover analysis, the Third Circuit just essentially applied... No, no, no, on the question that Judge Wilkins asked. Yes, Your Honor, yes, because it is coming up in an entirely different context. The district court didn't have the benefit in this case of McDonald. So we can't look at the district court and assess it against that standard. We're in a completely different circumstance here. McDonald has redrew the line as to what is illegal and what is illegal. And so we can't go back and say, I've entered my, may I finish and then reserve the rest. We can't go back and look at that and say, well, how would the judge have ruled? To apply the abuse of discretion, we just don't have the factors necessary to make that review of the district court's decision. The district court didn't have the benefit of McDonald. It is a prospective, what would this retry, what would a count three trial look like going forward? Do we think the defendant has a better chance to defend himself? We know he's been wrongfully convicted. If we were to give him another bite at the apple on count three, would it make a difference? And here, yes. In addition to the Blacan-Boulanger evidence, the district court in this case didn't even mention Mr. Ruscio's evidence that the trip had an official purpose. The court says that three witnesses said it didn't. That's just wrong. The record does not support that. Ehrlich, it was a business dinner. He wouldn't have been there if it wasn't. What remedy are you asking for? We want, Your Honors, to vacate or to reverse the district court's opinion. Find that if counts one and two fall, count three, there's prejudicial spillover that requires the reversal of count three, and then remand for the district court to conduct the analysis that I would say should have done but could have been done in the first instance, and I think would ease a lot of these questions. To conduct what analysis? You're saying that we should vacate the conviction on count three for a retrial, for it to be just set aside? I don't understand. It's a little bit of a unique posture because the district court assumed, in effect, that there was a violation without deciding so that she could get to the prejudicial spillover analysis. If this court says, look, if you get to the spillover analysis, count three is going to fall, we would like to hear your thoughts on count one and two. Do count one and two remain after McDonnell? And then how the district court resolves that claim determines whether or not the spillover test is even applicable. Maybe the district court says, no, it stays the same.  I'm still puzzled at your answer to Judge Wilkins' question. Are you arguing for a new trial? That would be the end result. Before the district court, that would be the remedy in this case. It would be a new trial on count three. Now, if you're asking what would be happening with one and two, that's a little different question, is it? Because then it gets into sufficiency of the evidence. Did the government fail to prove it such that they can't retry it, or could they amend the indictment and replead the defective counts one and two? But for present purposes, what you want is you want it to go to the district court for an analysis of the McDonnell question. And then your point is, if you win on the McDonnell question, then we get into questions about a new trial on any of the counts. Yes, Your Honor. For ten years, we've been grinding away at this issue. We want our day in court on the merits to see whether or not our argument post-McDonnell is correct. That's what we want. Thank you. Counsel. Go to the government. Good morning, Your Honors, and may it please the Court. Andrew Lang for the United States. Mr. Boruzio was convicted on two gratuities counts and one false statement count because he accepted a trip to the World Series for or because of his promise to influence the text of draft legislation being considered by the House Committee for which he worked. And then he concealed that trip from the House Ethics Office by knowingly omitting it from his financial disclosure form. That conduct was criminal at the time, and it remains criminal post-McDonnell. Influencing the text of legislation remains an official act, largely for the same reasons this Court articulated in its opinion applying this Court's precedent in Valdez on direct appeal. Do you think that the jury instructions that were given would be appropriate after McDonnell? Even post-McDonnell, I do. I think the jury instructions in this case accurately capture the post-McDonnell definition of official act, which in this circuit was not materially different from what it is now post-McDonnell nationwide. Valdez had already held that an official act can't include the mere release of information, and there has to be a specifically defined question or matter and then a decision or action. Unless there are questions from the panel about the custody issue, I can move into the prejudicial spillover quorum novis issue. The burden on the defendant here is extremely high. To satisfy the standard for a writ of error quorum novis, he has to show not only that a more usual remedy is unavailable, but that he had valid reasons for not making an argument at an earlier stage, such as on direct appeal. There are remediable adverse consequences under Article III, and there is an error here of the most fundamental character. Even getting past the first factor, Verruzio cannot satisfy any of the following three. With respect to the second factor, Verruzio doesn't have a valid reason for not having raised the prejudicial spillover argument at any earlier stage. The district court was correct that he raised it for the very first time ever in his motion for reconsideration in this litigation, and he's required to have a reason for not having made the argument before. He could have made it on direct appeal when he was challenging, among other things, the sufficiency of the evidence with respect to counts one and two, and at that point he could have made it. Is it fair to say that while pre-McDonnell? Well, the spillover argument is truly relevant only if you assume that the counts one and two go by the way because of McDonnell, which I've got to disagree with, but isn't that correct? Well, I agree with you up to a point, Your Honor. It's true that the prejudicial spillover argument depends on arguing that the convictions on counts one and two are invalid, but the basis for that argument doesn't really change the prejudicial spillover argument. The prejudicial spillover argument is simply once counts one and two are out of the picture, what evidence might have spilled over as to count three. That doesn't depend on the basis for the challenge to counts one and two, and so there's no reason why that argument couldn't have been made on direct appeal or even earlier. But even if he can get past that and show that there are valid reasons why this is the first time he's making the spillover argument, the spillover argument has a threshold problem and a merits problem. The threshold problem, as Judge Srinivasan alluded to, is that it's not clear that quorum nobis is ever available as a remedy when the usual remedy is a new trial, and at least the Third Circuit instillment has made that clear. When the usual remedy is a new trial, quorum nobis is simply off the table. But even if that weren't the case... Is there any case that you're aware of where a new trial has been granted as a result of a writ of quorum nobis? Not that the government is aware of, Your Honor. And again, there is some law, at least in the Third Circuit, which relies on a relatively old Supreme Court case that it's just categorically not available for these kinds of circumstances. That said, this prejudicial spillover argument, even if we arrive at the merits, fails on the merits. The prejudicial spillover inquiry essentially has two components. Whether there was spillover, which is to say whether there was evidence admitted with respect to Counts 1 and 2 that wouldn't have been admitted in a trial of Count 3 by itself, and then whether that spillover evidence caused prejudice, which entails consideration of whether the evidence was particularly inflammatory, such that it would have incited the jury, whether the jury was properly instructed, and of course whether the government's case was otherwise particularly strong. Because the stronger the government's case with respect to Count 3, the less likely it is that spillover evidence could have caused prejudice. All of those considerations weigh heavily in favor of the government here. First of all, it's not clear that there would have been any spillover evidence in this case, because most, if not all, of the evidence introduced with respect to Counts 1 and 2 would still have been admissible. in a trial of Count 3 by itself. The evidence of the trip itself, the value of the trip, that all tended to show what it was that Verruzio omitted from his financial disclosure form. How are we supposed to analyze that? Are we supposed to analyze that as if we were sitting as district court judges? Are we supposed to analyze that under some sort of use of discretion standard? How are we supposed to do that? Well, again, even assuming we can get to the merits, the standard here is the quorum novus standard. It's a very demanding standard for the defendant, and essentially we have to conclude that the error, if there was one, was of the most fundamental character, that it cries out for reversal or expungement of the convictions. This is not, of course, the same standard we would be applying on direct appeal or if we were admitting evidence in the first instance. I don't understand that, because I think you bought into the— well, I'm not saying it's necessarily right, but the government buys into the four-part test that's been applied by other courts for quorum novus, right? That's right, Your Honor. Okay, so then, as I understand it, the district court focuses its analysis on the third prong, and the district court says in assessing whether adverse consequences exist from the conviction, I have to figure out whether there's any adverse consequences that are unique to count three, because if there aren't, then prong three can't be satisfied, right? Yes, that's right. Okay, so then, if we're just looking at it that way, then we're not talking about the fact that quorum novus requires a fundamental error and things of that nature, because we're only—the prejudicial spillover inquiry comes about within the context of prong three of the analysis. So it doesn't—I mean, I get your point that, you know, if you step back a few layers, then we take into account the context of quorum novus, and quorum novus is extraordinary relief, but the way the case has been teed up for us, it comes up in a context in which the district court trained its analysis on prong three of the test that you accept, and on prong three of that test just asks us whether there's something different about count three than counts one and two, such that there would be collateral consequences remaining that weren't already accounted for by counts one and two. Yes, I take your point, Your Honor. I think, if I could attempt to rephrase where we are a little bit, the reason that the prejudicial spillover argument is relevant is because that's the only basis, according to the district court, through which Verruzio is challenging his conviction on count three. And in quorum novus, quorum novus would reverse or expunge the count three conviction. So to the extent that he's raising a quorum novus challenge to his conviction on count three, his reason for challenging his conviction on count three has to meet the standard for quorum novus relief. So that's the basis for our perspective, that the elevated quorum novus standard really does apply to this argument, top to bottom. Do you flatly take the position that if the argument is for a new trial, it's out of the ambit of quorum novus? Yes, Your Honor. But a quorum novus is a writ that's appropriate only in a situation where the grant relief would be to vacate the conviction. That's right, Your Honor. That appears to be where the cases come down. As I've mentioned to Judge Wilkins' question, I'm not aware of cases granting a writ of error quorum novus in this or any other new trial context. So, yes, that is our position. But why wouldn't it just be that the conviction is vacated and then there's a new trial? I don't understand the difference. Well, the remedy for quorum novus is essentially the expungement of the conviction. I'm not aware of case law holding that quorum novus can create a new trial, particularly this long after the judgment has become final. Why would it be? Because if you vacate the conviction, why isn't it just like what happens in a 2255 case or something, that the conviction gets vacated and then there's a question about whether there could be a retrial, which is based on some other considerations. Well, the Stoneman analysis essentially holds that the quorum novus is of a limited scope and all it's for is erasing a conviction and not a case where a new trial would be an appropriate remedy. As the First Circuit put it, I think, in George, which we cite on page 27 of our brief, quorum novus is at the far end of the spectrum of post-conviction remedies in terms of the importance of finality and the difficulty of a defendant or a petitioner getting relief. And like I said, Your Honor, I'm simply not aware of cases where a new trial has resulted after a grant for writ of error quorum novus. I also briefly in my time remaining want to touch on the prejudice part of the prejudicial spillover inquiry because there again the argument simply fails on the merits regardless of the standard that this court applies. First of all, Verruzio hasn't identified particularly inflammatory evidence that spilled over from counts one and two to count three. Second of all, it's relevant that the jury was properly instructed. That may not be dispositive, but it is a relevant consideration and there's no reason in this case to depart from the usual presumption that juries follow their instructions. Finally, if I could just make one final point, as the district court put it here, in fact, the government's case with respect to count three was exceedingly strong. It included, of course, Verruzio's own admissions that he knew he should have disclosed the trip but didn't. He knew the trip wouldn't have passed the scrutiny of the ethics office. He knew that in order to have disclosed the trip, he would have had to have mischaracterized it to the ethics office. That evidence was powerfully inculpatory and it was compounded by the schedule itself, which reflected the omission from the ethics office, the testimony of an ethics office attorney who tried and failed multiple times to get Verruzio to remedy a discrepancy in the disclosure form, and, of course, the testimony of the other participants in the trip. The two lobbyists, their contact at United Rentals, and the Senate staffer who also participated, who added testimony that they understood that the trip was not official. Perhaps it was business from United Rentals' perspective, but it wasn't an official trip in terms of Congress' business. And they understood that it should have been reported. So for all of these reasons, regardless of the standard this court applies, the prejudicial spillover argument fails. Verruzio certainly is not in custody. We thank you for your consideration and urge the court to affirm. Thank you, counsel. Mr. Sobiecki, we'll give you the two minutes you asked for. Thank you, Your Honor. May it please the court, to your question on the jury instructions, Jefferson, Silver, I don't have them side by side, but it sure looks like they reversed jury instructions that were identical to the ones in this case. So if that question was before the court, I think the answer would be affirmative. To the question, why not a retrial, I just keep hearing, well, because we don't do it. But I haven't heard any reason why. I mean, because it hasn't happened, let's see why. Because most defendants probably aren't, they've served their sentence, so they're unwilling to take the risk. There is a risk that if you go to a retrial, you can get a greater sentence. So maybe they just pack it in a call of the day. The collateral consequences here are real to Mr. Verruzio. Every day they impact his life. So, yes, he wants some remedy to relieve himself from the burden of those circumstances. I've not heard any explanation why I can't get a retrial in quorum nobis. Habeas is sort of the analog for quorum nobis. Judge Travascan, as you pointed out, you can get a retrial in habeas. No reason why you shouldn't be able to get a retrial quorum nobis. There is one official act here. Let's go back, let's be clear with that. One official act. The act is that Mr. Verruzio agreed to provide advice and strategy regarding these United Rentals. That comes solely from Trevor Bacon. The government has one witness and one act. This case doesn't survive McDonald. There is absolutely no way, looking back, that advice and strategy would still survive. Quickly, Mr. Verruzio's statements, I understand they're not good, but they overlook the distinction we're drawing between reportable travel and reportable gifts. There's no evidence that the FBI agent, he didn't give him the form. He didn't say, remember that trip five years ago? Let's reorient ourselves. Our point, so to the extent Mr. Verruzio discussed whether it would have to be disclosed, there's no evidence that was inconsistent with his position now, which is that there is an important distinction, Schedule 6, Schedule 7. I want to highlight the instructions, the Defense Exhibit 149. That was extremely consequential for us not to get those instructions. They are the instructions that said, just because it's not a CODEL, an official congressional trip, doesn't mean it's not reportable travel. This was Verruzio's job. His job was to meet with lobbyists. His job was to go to dinner. His job was to make them feel important, hear their ideas. Because all of the things he was doing was squarely within his job responsibility, this was reportable travel. The absence of being able to use those instructions, the Schedule 7, which this Court has already found was error, was significant. The District Court didn't address that evidence, which it should have. Thank you. We ask this Court to reverse and remand. Thank you, Counsel. Thank you, Counsel. Mr. Sobiecki, you were appointed by the Court to represent the appellant this matter, and the Court thanks you for your assistance. Thank you. The case is submitted. Stand, please.
judges: Srinivasan, Wilkins, Silberman